UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROGER EMERICK,
    Plaintiff,

v.

STATE OF CONNECTICUT, et al.,
    Defendants.

No. 3:18-cv-01766 (SRU)

# RULING ON MOTION TO DISMISS

Roger Emerick ("Emerick") filed this lawsuit *pro se* against Judge A. Susan Peck ("Judge Peck") of the Connecticut Superior Court, Judge Antonino Robaina ("Judge Robaina"), a retired judge of the Connecticut Superior Court, and various Connecticut state agencies (collectively, "Defendants"). Emerick claims that the Defendants conspired to violate his constitutional rights by dismissing his civil actions, discriminated against his *pro se* status, unlawfully divided his assets pursuant to an unconstitutional state statute, and failed to uphold judicial integrity. He seeks money damages against Judge Peck, Judge Robaina, and the Connecticut Judiciary. Emerick also requests declaratory and injunctive relief. The Defendants now move to dismiss the complaint.

For the following reasons, the Defendants' motion to dismiss (doc. no. 26) is granted.

**I.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

**II.     Background**

On October 26, 2018, Emerick filed this action against the State of Connecticut, Judge Peck and Judge Robaina. *See generally* Compl. (Doc. No. 1). In his original complaint, Emerick alleges that the Connecticut Judiciary and its "judicial oversight institutions" deprived him of due process by rendering numerous judgments against him in state court. *See id*. at 1–3. On

March 4, 2019, Emerick filed an amended complaint, adding various state agencies as Defendants.[1] *See* Am. Compl. (Doc. No. 23) at 1.

In his amended complaint, Emerick alleges that members of the Connecticut Judiciary, particularly Judge Peck and Judge Robaina, conspired to deprive him of his access to the courts and intentionally failed to uphold judicial integrity. *See id.* at 3–4. "I [] have been involved in several self-represented lawsuits in the CT courts since 1983. During that time [,] I have seen and experienced many, many examples of provable misconduct (especially lies) by State Judges, and failure / cover-up by State oversight institutions charged with upholding judicial integrity and criminal laws." *Id.* at 3. Those examples include Judge Peck dismissing one of Emerick's cases after she denied his evidentiary requests during trial (*see Emerick v. Glastonbury*, 177 Conn. App. 701, 702 (2017)) and Judge Robaina dismissing Emerick's motions for a preliminary injunction in an unrelated property case that Emerick filed against his ex-wife (*see Emerick v. Emerick*, Docket No. HHD-CV-15-5039939-S, Doc. No. 147).

After those incidents, Emerick requested an investigation into suspected perjury and criminal conspiracy involving state judicial officials. *See* Am. Compl. at 4. His request fell on deaf ears. "[The] State's Attorney never responded to [a request for] an investigation for criminal conspiracy and perjury . . . . The Attorney General declined to meet and discuss the issue of judicial [lying] and conspiracy. The State Police declined investigation. The Legislature's Judiciary committee declined to meet to discuss judicial [lying] and conspiracy." *Id*.

---

[1] Specifically, Emerick added: the Connecticut Appellate Courts; the State's Attorneys of Connecticut; the Connecticut Attorney General's Office; the Connecticut Judicial Review Council; the Connecticut Claims Commissioner; the Connecticut Legislative Judiciary Committee; and the Connecticut State Police (collectively the "Judicial Oversight Institutions"). *See* Am. Compl. at 1.

In addition, Emerick asserts that Connecticut's assignment of marital property statute, Connecticut General Statutes Section 46b-81 ("Section 46b-81"), is unconstitutional because it violates a civil litigant's right to a jury trial. *Id.* at 11. "Given the magnitude of the permitted asset assignment by a single person (a judge), based on specified considerations that logically require findings of facts . . . it is beyond any reasonable expectation of legitimate due process . . . to forbid a jury trial." *Id*. at 9.

In total, Emerick raises five claims against the Defendants. Count One is a Section 1983 claim against the Judicial Oversight Institutions listed in the amended complaint. *See* Am. Compl. at 2. Emerick alleges that those agencies deprived him of due process by refusing "to uphold judicial integrity." *Id.* In Counts Two and Three, Emerick alleges that Judge Robaina and Judge Peck conspired to violate his constitutional rights by dismissing his state cases. *Id*. at 8. Emerick brings Count Four against the State of Connecticut for enforcing a purported "[u]constitutional law [Section 46b-81]," which Emerick alleges "allow[s] transfer of all assets in a dissolution by a judge without any enforced judicial integrity, [and without] recognizing any right to a jury trial." *Id.* at 8, 11. Finally, Emerick brings Count Five against the State of Connecticut for violating his constitutional right to a jury trial by enforcing Section 46b-81. *Id*. at 8–9. Emerick seeks monetary and declaratory relief for Counts One, Two, Three, and Five, and an injunction against the State of Connecticut from enforcing Section 46b-81 in Count Four. *Id.* at 9–12.

On March 22, 2019, the Defendants moved to dismiss the amended complaint. *See* Mot. to Dismiss (Doc. No. 26). In their motion, the Defendants contend that dismissal is proper for several reasons including: (1) the Eleventh Amendment prevents the State of Connecticut and its agencies from being sued in their official capacities; (2) absolute judicial immunity bars

4

Emerick's claims against Judge Robaina and Judge Peck; (3) qualified immunity bars all claims for money damages against Judge Robaina and Judge Peck; and (4) the *Rooker-Feldman* doctrine bars Emerick's claims to the extent that they challenged the validity of adverse judgments rendered against hm in state court. *See generally* Mem. in Supp. Mot. to Dismiss ("Defs' Mot.") (Doc. No. 26-1). On January 10, 2020, I held oral argument and took the motion under advisement. *See* Doc. No. 30.

For the reasons stated below, I conclude that Emerick's claims are barred by absolute judicial immunity and the Eleventh Amendment. Therefore, the Defendants' motion is granted.

### III.  Discussion

####   A. Claims against Judge Robaina and Judge Peck

The Defendants move to dismiss Counts Two and Three against Judge Robaina and Judge Peck in their official capacities. The Defendants contend that Emerick's claims for monetary and declaratory relief against both judges are barred by absolute judicial immunity because they involve judicial acts undertaken by judges in their judicial capacities. *See* Defs' Mot. at 11.

In Counts Two and Three, Emerick alleges that Judge Robaina and Judge Peck violated his constitutional rights by conspiring to dismiss his civil cases. *See* Am. Compl. at 8. To support that assertion, Emerick references an incident with Judge Peck that occurred in 2015. On the final day of trial, Judge Peck dismissed Emerick's case after reading from a prepared statement rebuking Emerick's in-court conduct. *See id.* at 3. Judge Peck then ordered Emerick out of her courtroom and into the courthouse lobby where he then ran into Judge Robaina who allegedly told him to "get out of the courthouse and don't come back." *Id.* at 3–4. Emerick believes that the reason Judge Robaina made that statement was because he knew in advance that

Judge Peck would dismiss his case.  *See* Mot. Hr'g. Tr. (Doc. No. 31) at 15.  Emerick later filed motions for re-argument and articulation, which were both denied.  *Id*. at 16.  Those facts, Emerick argues, support a claim for conspiracy.  *Id*. at 15–16.

Accepting the allegations as true, Judge Peck and Judge Robaina's statements were unfortunate.  It is understandable that Emerick would be distraught after being ordered to leave the courthouse immediately after his case was dismissed.  However, to the extent he argues that an adverse judgment rendered by either judge constitutes conspiracy, that claim is barred by the doctrine of absolute judicial immunity.

Judicial officers, which include state court judges, are entitled to absolute immunity for "acts committed within their judicial jurisdiction."  *Turner v. Boyle*, 116 F. Supp. 3d 58, 81 (D. Conn. 2015) (quoting *Bradley v. Fisher*, 13 Wall. 335, 336 (1872)).  Under absolute immunity, state court judges "are immune from suit for complaints related to any actions undertaken in the performance of their duties as judges."  *Id.* at 81.  Absolute immunity extends to civil lawsuits, including those brought under Section 1983 and Section 1985.  *Id*.  There are two exceptions to judicial immunity.  "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.  Second, a judge is not immune [from] actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).

In this case, Judge Peck and Judge Robaina's rulings made during Emerick's civil actions are "judicial actions" for the purposes of absolute immunity.  *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978) ("[F]actors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.").  To

support the claim asserted in Count Two, Emerick argues that Judge Peck "engage[d] in conspiracy and perjury" when dismissing his state court action on the last day of trial. *See* Am. Compl. at 8. The disposition of a case, however, is a "judicial act" protected by absolute immunity. Although Emerick was disappointed by the outcome, Judge Peck's rulings on evidentiary motions and her eventual dismissal of his case are functions "normally performed by a judge." *Stump*, 435 U.S at 362. Similarly, Judge Robaina's rulings regarding Emerick's request for a temporary injunction are tasks routinely performed by a judge. *See* Am. Compl. at 6. As a result, Judge Peck and Judge Robaina's judicial decisions pertaining to Emerick's cases are protected by judicial immunity. Therefore, Emerick cannot base his conspiracy claims on an adverse ruling he received from either judge.

Emerick also references disparaging statements allegedly made by Judge Peck and Judge Robaina that were not associated with a judicial determination. *See, e.g., id.* at 3 ("In a first 'chambers' meeting [Judge Peck] said unrepresented parties do not get this far."); *see also id.* at 3–4 ("As ordered I stepped out of the Courtroom and into the main lobby filled with lawyers where a voice rang out by 'Chief Judge' Robaina, 'Emerick get out of the courthouse and don't come back.'"). In his opposition, Emerick argues that those statements are not covered by judicial immunity because they are not "judicial acts." Pl's Opp. (Doc. No. 27) at 8. Emerick is correct that those statements as alleged may invoke the "nonjudicial actions" exception to absolute judicial immunity. *See Stump*, 435 U.S at 362. However, Emerick notes that his conspiracy claims against Judge Peck and Judge Robaina are based primarily on their rulings dismissing his cases. "[T]he secretive Robaina/Peck conspiracy was not a judicial act normally performed by judges, rather an act intended to accomplish, *through a judicial act* the illegitimate conspired and smiling dismissal of [Emerick's] case [and] . . . [Emerick's] eradication from the

7

courthouse." Pl's Opp. at 8 (emphasis added). As discussed above, Judge Peck and Judge Robaina's orders dismissing Emerick's cases are covered by absolute immunity.

Even if Emerick's conspiracy claims were based solely on Judge Peck and Judge Robaina's statements made outside of court, Emerick is unable to establish a conspiracy claim under 42 U.S.C. § 1985. To assert a conspiracy claim, Emerick must establish four elements: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the law; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Medvey v. Oxford Health Plans*, 313 F. Supp. 2d 94, 99 (D. Conn. 2004) (citing *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 828–29 (1983)).

In his amended complaint, Emerick does not allege that he was harmed solely by the judges' outside-of-court statements. Instead, he alleges that he was injured by the overarching judicial conspiracy against him, based primarily on actions barred by judicial immunity. Although the judges' statements to Emerick may have been inappropriate, the statements alone are insufficient to sustain a conspiracy claim under section 1985.[2]

---

[2] In his opposition, Emerick cites *Beard v. Udall*, 648 F.2d 1264, 1270 (9th Cir. 1981), *overruled by Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986), for the proposition that "[a] judge can be liable for participating in a conspiracy if the acts indicating participation were taken by the judge otherwise than in his judicial role." (internal quotations omitted). The *Beard* decision, however, was overruled by the Ninth Circuit five years later in *Ashelman*. "We concluded in *Beard* and *Rankin* that no immunity applied because we focused not on these ultimate acts but rather on the act of conspiring to predetermine the outcome of the proceeding. There appears to be no other authority for making the underlying conspiracy the determinative act in deciding whether immunity should be available. Judges' immunity from civil liability should not be affected by the motives with which their judicial acts are performed . . . . To the extent that *Rankin* and *Beard* are to the contrary, they are [overruled]." *Ashelman*, 793 F.2d at 1077–78.

For the reasons stated above, I conclude that the allegations in Counts Two and Three fail to state a claim for conspiracy. Therefore, the Defendants' motion regarding the claims asserted against Judge Peck and Judge Robaina is granted.

B. Emerick's Claims for Money Damages

In the amended complaint, Emerick seeks money damages from various state agencies. In Count One, he asserts a claim under 42 U.S.C. § 1983 against the State of Connecticut's Judicial Oversight Institutions for "failure to uphold judicial integrity" and for violating his due process rights under the federal and state constitutions. He alleges that several state agencies either failed to investigate or permitted Judge Peck and Judge Robaina to discriminate against him based on his *pro se* status. *See, e.g.,* Am. Compl. at 4 ("The State Claims Commissioner, after 2+years simply denied a request to sue the state on the incorrect grounds that all judicial conduct is protected by immunity; without addressing the subject of the illegal extrajudicial conduct that occurred."). In Count One, Emerick seeks money damages from the Judicial Oversight Institutions in their official capacities. *See* Am. Compl. at 9. The Defendants move to dismiss Emerick's claims against the Judicial Oversight Institutions, arguing that Eleventh Amendment immunity applies. *See* Defs' Mot. at 10.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Eleventh Amendment immunity relates to the relationship between the states and the federal government. It deprives the federal courts of power to award money damages enforceable against a state's treasury." *Beaulieu v. Vermont*, 807 F.3d 478, 485 (2d Cir. 2015). As a result, claims for money damages against a state or one of its agencies are generally barred by the Eleventh Amendment "[u]nless Eleventh Amendment immunity has been

9

waived by the state or abrogated by Congress." *Walker v. City of Waterbury*, 253 F. App'x 58, 60 (2d Cir. 2007).[3]

In this case, Emerick lists Connecticut's "Judicial Oversight Institutions" as defendants in their official capacity. *See* Am. Compl. at 1. In Count One, Emerick seeks monetary damages from those Defendants. "A minimum of $1 million compensatory/general damages is requested, and punitive damages as deemed appropriate and just by the jury for the extensive failure of all CT judicial oversight institutions." *Id*. at 10. In Count Five, Emerick requests "50% of the judicial salary and pension of judges . . . who considered the issues in his dissolution" case. *Id*. at 11.

In his opposition, Emerick cites the Fourteenth Amendment to the U.S. Constitution, which provides that no state shall deprive "any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Pl's Opp. at 6 (quoting U.S. Const. amend. XIV). Similarly, he notes that Section 1983 protects "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" has been deprived of rights secured by the U.S. Constitution. *See id*. (quoting 42 U.S.C. § 1983).

The Supreme Court, however, has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id*. (internal citations omitted). "Additionally, a state court and, by extension, its members, are immune from

---

[3] Despite its literal wording, the Eleventh Amendment has been extended to apply to suits by citizens against their own states. *See, e.g., Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2002).

a suit for damages for their judicial acts performed in their judicial capacities." *Brooks v. New York State Supreme Court, Appellate Div. First Dep't*, 2002 WL 31528632, at *2 (E.D.N.Y. Aug. 16, 2002) (citing *Mireles*, 502 U.S. at 11).

Here, Emerick's lawsuit for money damages against Connecticut's Judicial Oversight Institutions is considered a suit against the state itself. Hence, the Judicial Oversight Institutions are not "persons" under Section 1983. *See id.* Therefore, Emerick's requests for money damages from the State of Connecticut or any of its agencies are barred by the Eleventh Amendment. For the same reason, Emerick's monetary claims against the Connecticut Appellate Courts are barred.

Emerick's claims for money damages against Judge Peck and Judge Robaina in their official capacities are barred because judges are state officials. *See Will*, 491 U.S at 71. To the extent Emerick seeks money damages from Judge Peck and Judge Robaina in their individual capacities, those requests are barred by judicial immunity for the reasons discussed above.

Emerick correctly indicates that there are two exceptions to Eleventh Amendment immunity: (1) If a state has consented to the lawsuit or (2) Congress has abrogated the states' sovereign immunity. *See* Pl's Opp. at 6; *see also Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015). In this case, there is no indication that the State of Connecticut has waived its sovereign immunity. Nor has Congress abrogated Connecticut's sovereign immunity. Although Emerick argues that Congress has abrogated Connecticut's sovereign immunity through Section 1983, *see* Pl's Opp. at 6, courts have held that "section 1983 does not abrogate the immunity of the states, including Connecticut." *Gyadu v. Appellate Court*, 2009 WL 5110842, at *3 (D. Conn. Dec. 17, 2009). As a result, the exceptions to Eleventh Amendment immunity do not apply in this case.

Therefore, I conclude that Emerick's claims for money damages in Counts One and Count Five are barred by the Eleventh Amendment. The Defendants' motion is granted with respect to those claims.

C. Emerick's Claims for Injunctive and/or Declaratory Relief

Emerick requests that a declaratory judgment be entered against the Judicial Oversight Institutions stating that they have failed to uphold judicial integrity. *See* Am. Compl. at 10. He also seeks an injunction requiring the Judicial Oversight Institutions to acknowledge any future mistakes. *Id*.

Emerick's requests for declaratory and injunctive relief against the Judicial Oversight Institutions are also barred by Eleventh Amendment immunity. In the amended complaint, the declaratory relief Emerick seeks is a declaration that Connecticut state agencies "failed and/or refused to properly uphold judicial integrity." *Id.* The Supreme Court has determined that the Eleventh Amendment "does not permit judgments against state officers [or their agencies] declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993). Therefore, declaratory relief against the Judicial Oversight Institutions is not available.

Likewise, prospective injunctive relief against the Judicial Oversight Institutions is barred. Because Emerick seeks injunctive relief from state agencies in their official capacities, *see* Am. Compl. at 1, Eleventh Amendment immunity applies. *See Lee v. Dep't of Children & Families*, 939 F. Supp. 2d 160, 165 (D. Conn. 2013) ("For suits against states or their agencies, '[t]his jurisdictional bar applies regardless of the nature of the relief sought'") (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Under the *Ex parte Young* doctrine, it is possible for a plaintiff to seek prospective injunctive relief from a state official sued in his or her individual capacity. "The doctrine of *Ex parte Young*, which ensures

that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law, is regarded as carving out a necessary exception to Eleventh Amendment immunity." *Puerto Rico Aqueduct & Sewer Auth*, 506 U.S at 156. However, the *Ex parte Young* exception is narrow. *Id*. "It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Id*. As noted above, the only officials that Emerick lists in their official capacities are Judge Peck and Judge Robaina, who are protected by judicial immunity. *See* Am. Compl. at 1. Thus, the *Ex parte Young* doctrine is not applicable. Accordingly, Emerick's claims for declaratory and injunctive relief against the Judicial Oversight Institutions are dismissed.

Lastly, Emerick argues that Connecticut's dissolution statute, Section 46b-81,[4] is unconstitutional because it enables judges to devise property without a jury, in violation of the Seventh and Fourteenth Amendments to the U.S. Constitution. *See* Am. Compl. at 11. Specifically, he contends that Section 46b-81 violates civil litigants' right to a jury trial secured by the Seventh Amendment. *Id*. at 9. "[A]s practiced, [under Section 46b-81] a lone judge can make any or no findings of fact [regarding dissolution], and does not have to discuss any findings of facts; and is never held to any standard of enforced judicial integrity." *Id.* In response to Section 46b-81, Emerick requests:

      (1) a declaratory judgement that the law is unconstitutional as written and practiced;

---

[4] Section 46b-81 provides in relevant part:

  (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, *the Superior Court may assign* to either spouse all or any part of the estate of the other spouse. *The court may pass title* to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect.

Conn. Gen. Stat. § 46b-81 (emphasis added).

13

(2) a requirement that dissolution judges reply to motions for articulation regarding findings of fact;

(3) a requirement that future marriages include a pre-nuptial agreement describing asset division in the event of dissolution; and

(4) a requirement that dissolution litigants be advised that they can apply for a jury trial of the facts pursuant to Connecticut General Statutes Section 52-218.

*Id.* at 11.

Emerick appears to interpret the statute correctly. Under Section 46b-81, a state court judge may assign marital property by passing title to either party or to a third person without factual determinations from a jury. Contrary to Emerick's assertions, however, there is no jury trial right in marital dissolutions under Connecticut law because they are equitable causes of action. *See Gluck v. Gluck*, 181 Conn. 225, 228 (1980) ("A dissolution of a marriage although a creature of statute is essentially an equitable action."). In an equitable cause of action, "[i]t is well settled that there is no right to a jury trial . . . . In an action that is essentially equitable, the court may determine incidental issues of fact without a jury." *Gaudio v. Gaudio*, 23 Conn. App. 287, 301 (1990) (internal citations omitted).[5]

Nevertheless, Emerick notes that Connecticut General Statutes Section 52-218 ("Section 52-218") provides that "[u]pon the application of either party, the court may order any issue or issues of fact in any action demanding equitable relief to be tried by a jury of six." Conn. Gen. Stat. § 52-218. Based on the wording of the statute, it is reasonable for Emerick to conclude that Section 52-218 applies to marital dissolutions. However, Connecticut courts have held that a jury request under Section 52-218 is not a constitutional right, but is rather a request within the complete discretion of the court. *See Connecticut Hous. Fin. Auth. v. John Fitch Court Assocs.*

---

[5] Connecticut trial courts have "extensive discretion regarding financial awards in dissolution actions." *Calo-Turner v. Turner*, 83 Conn. App. 53, 61 (2004).

14

*Ltd. P'ship*, 44 Conn. Supp. 411, 416, (Super. Ct. 1996) ("While a jury claim under § 52-215 is a matter of right . . . a jury claim under § 52-218 is not a matter of constitutional or statutory right. A determination of whether to grant the motion and what issues to submit to the jury is left entirely to the discretion of the court and this discretion should be sparingly exercised.") (internal citations and quotations omitted).

For the reasons stated above, Emerick's claim that he was denied his Seventh Amendment right to a jury trial by Section 46b-81 is contrary to Connecticut law. Accordingly, the Defendants' motion to dismiss with respect to Count Four is granted.

**IV.   Conclusion**

For the foregoing reasons, I **grant** the Defendants' motion to dismiss (doc. no. 26) Emerick's claims.[6] The Clerk shall enter judgment in favor of the Defendants and close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 6th day of March 2020.

/s/ STEFAN R. UNDERHILL  
Stefan R. Underhill  
United States District Judge

---

[6] Because I conclude that Emerick's claims are barred for the reasons stated above, I do not address the Defendants' remaining arguments in support of dismissal.